German ORTIZ et al.,
Plaintiffs-Appellees,

v.

Hon. Rafael HERNANDEZ COLON, Governor of the Commonwealth of Puerto Rico, et al., Defendants-Appellants.

No. 74–1115.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1975.

Decided Feb. 28, 1975.

Miriam Naveira de Rodon, Sol. Gen., with whom Peter Ortiz, Deputy Sol. Gen., was on brief, for appellant.

Harvey B. Nachman, San Juan, P. R., with whom Dubon & Dubon and Nachman Feldstein & Gelpi, San Juan, P. R., were on brief, for appellees.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

We are faced with a somewhat thorny problem. On January 16, 1974 a three-judge district court, finding that it had jurisdiction, and declining to abstain be-· cause it saw no way that the Puerto Rico Supreme Court could resolve or remove the difficulty,[1] held unconstitutional 21 LPRA § 1152(b) under which the Governor of Puerto Rico shall add to the twelve elected members of the Municipal Assembly of San Juan five members appointed by himself with the advice and consent of the Senate. D.C.P.R., 385 F.Supp. 111. Hopeful that the Puerto Rico legislature might see fit to amend the statute so as to remove what the court saw as an unconstitutional defect, the court issued no injunction, but contented itself for the nonce with entering a declaratory judgment. We say for the nonce, because it expressly retained jurisdiction and the right to issue an injunction later if the legislature did not see fit to respond.

■ The legislature did not respond. In the meantime the defendants appealed. Taking note of the filing of the appeal, this court requested the parties to state their position as to whether the appeal lay with us or with the Supreme Court. Upon receipt of memoranda we concluded last April, a conclusion to which we adhere, that an appeal did not, on the then state of the record, lie in the Supreme Court. *Compare* Gunn v. University Committee to End the War in Vietnam, 1970, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684, *with* Schmidt v. Lessard, 1974, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (per curiam). At the same time we stated that we were expressing no view on whether there was a final judgment, so as to permit an appeal to us. The parties did not, in response to this motion, move to have the case transferred to the Boston calendar for early disposition of that question, or to submit on briefs without argument. We face that question now.

■ Before dealing with this issue defendants raise a new question of jurisdiction. We feel that our supervisory power, 28 U.S.C. § 1651, at least calls for comment, noting that our comment will not be final since the matter of jurisdiction always remains open. Defendants now contend that the district court itself had no jurisdiction. The argument goes like this. In Calero Toledo v. Pearson Yacht Leasing Co., 1974, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, the Court held that Puerto Rico fits the term "state" for the purpose of three-judge district court jurisdiction under 28 U.S.C. § 2281, which was enacted for "the purpose of insulating a sovereign State's laws from interference by a single judge . . . .." *Id.* at 671, 94 S.Ct. at 2085. *See* Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 377–78, 69 S.Ct. 606, 93 L.Ed. 741. Since the Commonwealth of Puerto Rico had become a self-governing constitutional entity independent of specific Congressional direction and thus " 'sovereign over matters not ruled by the Constitution,' " *see* Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, 387–88, *Calero Toledo* held it no less entitled than the states to protection of three-judge scrutiny under section 2281. 416 U.S. at 670–75, 94 S.Ct. 2080, 40 L.Ed.2d 452. *Cf.* Wackenhut Corp. v. Rordiguez Aponte, D.P.R., 1966, 266 F.Supp. 401, 405, aff'd per curiam, 386 U.S. 268, 87 S.Ct. 1017, 18 L.Ed.2d 37. Because jurisdictional requirements in *Calero Toledo* were clearly satisfied under 28 U.S.C. § 1331, the

---

1. The Puerto Rico Court could not, by any process of construction, alter the fact that the Governor of Puerto Rico can appoint five persons of his choice to the San Juan Assembly; nor could it by interpretation avoid the consequence that by this action he may change a minority party in the Assembly into a majority.

Court refrained from considering whether the Commonwealth might also be characterized as a state for the purposes of jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), see 416 U.S. at 677 n. 11, although noting that the propriety of such a characterization depends upon the extent to which it comports with the overall intent and "serves . . the purposes" of the legislation. *Id.*, 416 U.S. at 675, 94 S.Ct. 2080, 40 L.Ed.2d 452. *See also* District of Columbia v. Carter, 1973, 409 U.S. 418, 420, 93 S.Ct. 602, 34 L.Ed.2d 613.

However, the Court addressed the intent and purposes of section 1983 in District of Columbia v. Carter, ante, and held that the District of Columbia might not properly be termed a "State or Territory" thereunder. *See also* Washington .Free Community, Inc. v. Wilson, 1973, 157 U.S.App.D.C. 360, 484 F.2d 1078, 1081. Defendants argue that these cases are controlling of the instant question. We agree, but with the opposite conclusion. The Court determined in *Carter* that section 1983 was enacted to protect citizens against unconstitutional state action under the Fourteenth Amendment by conferring federal jurisdiction over sovereign entities not otherwise subject to federal control. 409 U.S. at 423–30, 93 S.Ct. 602, 34 L.Ed.2d 613. Since the District of Columbia is neither a state for the purposes of the Fourteenth Amendment, *see* Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884, nor in any sense insulated from plenary Congressional authority over "all the legislative powers which a state may exercise over its affairs," Berman v. Parker, 1954, 348 U.S. 26, 31, 75 S.Ct. 98, 102, 99 L.Ed. 27, the statutory purposes of section 1983 would not be served by the District's inclusion within the provision's jurisdictional ambit. 409 U.S. at 424, 429, 93 S.Ct. 602, 34 L.Ed.2d 613.

The Commonwealth's situation is precisely the opposite. Indeed, the very reasons which called in *Calero Toledo* for the Commonwealth's special protection by a three-judge district court as a matter of comity and respect—its sovereign status and functional independence from Congressional control—call with equal force for the special protection of the Commonwealth's citizens against unwarranted and otherwise insufficiently checked governmental action provided by 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

The citizens of the several states are permitted to seek redress in the federal courts for deprivation of their rights under color of state law without first seeking relief in the state courts. Monroe v. Pape, 1961, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492. We yield to no one in our regard for the Supreme Court of Puerto Rico, but at the same time, if citizens of the several states may call for an initial decision in the district court without deferring to the courts of their local state, we must wonder how we could conscientiously hold that under 28 U.S.C. § 1343 United States citizens resident in Puerto Rico are any less entitled. With great respect to the distinguished Solicitor General of Puerto Rico, who raised this point only at oral argument, we believe that it was a last minute concept not fully thought through in all its ramifications. We do. not accept it.

Turning from the jurisdiction of the district court to our own, the appealability of this matter presents something of a dilemma. The district court's failure to take a position on whether to issue an injunction, since it was only a postponement of its decision, indicates, as we stated earlier, the lack of a right to appeal to the Supreme Court. On the other hand, this same lack of finality raises serious questions of our own jurisdiction. *See* 28 U.S.C. § 1291. None of the recognized exceptions apply, unless one were to say that the decision was essentially final because only a routine and procedural matter remained. *Cf.* Mills v. Alabama, 1966, 384 U.S. 214, 217, 86 S.Ct. 1434, 16 L.Ed.2d 484. However, such an analysis would immediately raise the spectre that in substance we would be acting beyond our powers. If we were to take jurisdiction, render a decision on the merits, and send the case

back, either to enter an injunction, or to dismiss, and hence deny one, we would seem in so doing to have directly usurped the Supreme Court's jurisdiction.

In a 2–1 decision of the Second Circuit, in a stronger case for taking jurisdiction than this one because the district court had been less plain in reserving consideration of a possible injunction, Thoms v. Heffernan, 2 Cir., 1973, 473 F.2d 478, vacated on other gr'ds, 7/8/74, 418 U.S. 908, 94 S.Ct. 3199, 41 L.Ed.2d 1154, the court took jurisdiction and affirmed the district court. But at the same time, it expressly recognized that if, thereafter, the district court issued an injunction, the court of appeals ruling would be automatically mooted. *See* 473 F.2d at 480 n. 1. With due respect, this seems a most unsatisfactory solution. Our affirmance would give the state totally free rein to disregard our ruling, and hence require the district court to issue the injunction, thereby mooting our decision, according to *Thoms*, and then appeal to the Supreme Court. Nor could we criticize a state for so exercising the rights which Congress has given it. Rather, we think the majority in *Thoms* has again merely illustrated the wisdom of the old adage that hard cases—here a peculiar statute—make bad law. We prefer Judge Timbers' dissent, and the view of another panel of the Second Circuit which he quoted.

In accordance with that view, *see* 473 F.2d at 487–88, we decline jurisdiction and take no position on the merits, but remand the case to the district court to take such action as it sees fit on the injunction.[2]

Because Chief Judge Coffin is a member of that court and, because he has already made a decision therein, he must be disqualified from making a designation to fill the vacancy created by the resignation of former Judge Cancio. The remaining members of the Circuit

Council appoint the Honorable Juan R. Torruella, U.S. District Judge for Puerto Rico, to be the third member of the three-judge court.

---

**2.** We take informal note of the defendants' urging us not to reject jurisdiction because rejection will result in considerable lost motion. We regret the lost motion, but it is axiomatic that jurisdiction cannot be conferred by consent. So long as there remains a possibility that an injunction may be needed, our declination must stand.