Kendrix M. **EASLEY**, Plaintiff,

v.

**UNIVERSITY OF MICHIGAN BOARD OF REGENTS, Deane Baker, Paul W. Brown, Neal D. Nielsen, Sarah Goodard Power, Thomas A. Roach, Veronica L. Smith, Nellie Varner and James Waters, each individually and as members of said board; Terry Sandalow, individually and as Dean of Law School; Theodore St. Antoine, Peter Westen, Beverly Pooley, each individually and as law professors; Susan Eklund, individually and as Assistant Dean of Students and Kris Munroe, individually and as Administrative Assistant, Jointly and Severally, Defendants.**

No. 84–CV–7560–AA.

United States District Court, E.D. Michigan, S.D.

Aug. 20, 1985.

Douglas L. Webster, Southfield, Mich., for plaintiff.

Doris M. Harker, Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, Chief Judge.

This lawsuit arises out of a series of events that have prevented plaintiff, Kendrix Easley, from receiving his Juris Doctor degree from University of Michigan Law School. Plaintiff's First Amended Complaint sets forth plaintiff's claims in eight counts. Jurisdiction is based upon 28 U.S.C. § 1331, a federal question being at issue.

The matter before me is defendants' Second Motion to Dismiss and Motion for Summary Judgment. In analyzing whether I should grant the Motion to Dismiss, I must view the alleged facts in a light most favorable to plaintiff. Therefore, any statement of the alleged facts should not be interpreted as findings by me; rather, the facts that follow are stated in a light most favorable to plaintiff.

Plaintiff began his studies at University of Michigan Law School in May, 1979. In preparation for graduation plaintiff discussed the necessary credit hours and academic requirements with defendant Kris Munroe, Recorder and Administrative Assistant at the law school. This discussion took place during December, 1981. Another discussion on the same topic took place among plaintiff, Monroe, and defendant Dean Susan Eklund in January, 1982. Plaintiff was told that he would meet the requirements for graduation if he completed his final semester.

On May 15, 1982, two days after plaintiff completed his last law school examination, he attended the University of Michigan Law School Senior Day Activities. Plaintiff did not receive a Juris Doctor degree certificate at the Senior Day event, but he did receive a certificate of lifetime membership to the Law School Lawyers' Club.

On June 18, 1982, plaintiff met with defendant Professor Theodore St. Antoine regarding the grade plaintiff received in St. Antoine's employment discrimination course. St. Antoine agreed to raise plaintiff's grade, but plaintiff continued to protest that the grade he received was too low. Harsh words were spoken, and plaintiff was told to leave St. Antoine's office.

On July 15, 1982, plaintiff was notified by Eklund that St. Antoine had charged plaintiff with cheating on his employment discrimination final examination. St. Antoine had informed Eklund of the charge in a memorandum sent to her after St. Antoine had raised plaintiff's grade from a "D" to a "D+." The Michigan Committee on Professional Responsibilities was advised, and plaintiff was instructed to withdraw from taking the Michigan Bar Exam.

On July 16, 1982, plaintiff was informed by Eklund that he had received only five credit hours for completing Professor James Martin's civil procedure course instead of the six credit hours he needed to

meet the total credits requirement for graduation. Thus, plaintiff was informed that he was one credit short of meeting graduation requirements.

After the St. Antoine cheating charge plaintiff presented a paper entitled "Comparative Analysis of African and American Slave Systems" to defendant Professor Peter Westen. Plaintiff claims that he presented the paper as a pretext for meeting with Westen to talk about the St. Antoine cheating charge. After reading plaintiff's paper and checking sources, Westen accused plaintiff of cheating, specifically plagiarism.

In separate hearings on the cheating charges plaintiff was found not guilty on the St. Antoine charge and guilty on the Westen charge.

█ Plaintiff has sued the University of Michigan Board of Regents as an official board and as individuals. In their official capacities the Board of Regents are an agency of the state, *see Ewing v. Board of Regents of University of Michigan*, 552 F.Supp. 881 (E.D.Mich.1982), *rev'd on other grounds*, 742 F.2d 913 (6th Cir.1984); *Marwil v. Board of Regents*, Civil Action No. 79–7331 (E.D.Mich., July 3, 1980), and as such, they are immune from suit. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978). Plaintiff has not alleged that the State of Michigan has consented to suit, and I hold that they have not. Therefore, I dismiss the University of Michigan Board of Regents in their official capacities. In any event the Board, qua Board, is not a necessary party to grant the relief sought.

█ Plaintiff has also sued the Board of Regents in their individual capacities. Whether they can be sued in this capacity is not relevant here. In looking at the facts in a light most favorable to plaintiff, none of the acts or omissions made by the Regents as individuals support a claim upon which relief can be granted. Therefore, I dismiss the Board of Regents defendants in their individual capacities.

█ I question whether I can entertain plaintiff's state claims against remaining defendants. The principles of comity militate against a federal court directing state officials, in this case deans, professors, and a recorder at University of Michigan Law School, in how to conform to state law. The teachings of the Supreme Court in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), support the conclusion that I should not entertain plaintiff's pendent claims. It is within my discretion whether I hear pendent claims, and I decline to exercise such jurisdiction here. I therefore do not address the question whether I am precluded to hear such claims under *Pennhurst*. Counts V, VI, VII, VIII and any state claims in other Counts are accordingly dismissed without prejudice.

Count I of plaintiff's Amended Complaint states only that defendants had no jurisdiction to revoke plaintiff's Juris Doctor degree or to otherwise affect plaintiff's academic status after May 13, 1982, because plaintiff was no longer a student at University of Michigan. The Count does not allege any federal jurisdictional basis, and if the Count constitutes a state claim (I question whether it does), I decline to exercise my discretion to hear the claim under pendent jurisdiction for the reasons stated *supra*. Thus, I dismiss Count I without prejudice.

Counts II, III, and IV claim that defendants deprived plaintiff of property interests in one credit hour and a 1982 Juris Doctor degree from University of Michigan Law School without substantive and procedural due process guaranteed by the fifth and fourteenth amendments of the United States Constitution. In addition, plaintiff claims that his civil rights were violated under 42 U.S.C. §§ 1981, 1982, and 1983 and that he was not afforded equal protection of the law because the above deprivations were based upon willful and unlawful considerations of plaintiff's race.

█ In viewing the facts in a light most favorable to plaintiff, I must allow the aforementioned claims in Counts II, III,

and IV to survive defendants' Motions. I add, however, that plaintiff must prove an entitlement to one credit hour and/or the Juris Doctor degree in order to prevail. So that at trial there will be no misunderstanding, I regard amended Counts II, III, and IV as plaintiff's claims alleging a violation of substantive due process rights. If plaintiff is entitled to receive the one credit hour in dispute and the Juris Doctor degree, and he proves that, he would then need to prove that he was deprived of this entitlement in an arbitrary or capricious manner. It would not be necessary for plaintiff to prove race discrimination in order to receive the relief he seeks. However, if he does have such proof, he may present it.

We are really not dealing here with a procedural due process claim. If plaintiff's claim consists only of a denial of a procedural due process, the only relief that could be granted would be an opportunity for plaintiff to respond to the Law School's decision that he did not have a sufficient number of total credits required for graduation. Obviously, plaintiff is asking for more than simply an opportunity for a hearing to respond to that action.

Accordingly, proof of plaintiff's entitlement to the credit hour and/or the Juris Doctor degree by a preponderance of the evidence is required and that proof must be more than simply a subjective belief on the part of plaintiff that he was entitled to them. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Defendant's Motion for Summary Judgment or Dismissal is GRANTED with respect to Counts I, V, VII, VIII, and all pendent claims in Counts II, III, and IV. Defendants' Motion is DENIED with respect to federal claims in Counts II, III, and IV. Defendant's Motion for Summary Judgment is DENIED. Trial on this matter shall commence on August 23, 1985. The material allegations in Counts II, III, and IV are deemed denied by defendants, who shall file an answer thereto *nunc pro tunc.*

IT IS SO ORDERED.